IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Mark T., | ) |
|     *Plaintiff*, | ) ) ) ) Case No. 3:21-cv-50451 |
| v. | ) ) Magistrate Judge Margaret J. Schneider |
| Michelle King, Acting Commissioner of Social Security,[1] | ) ) ) ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

    Mark T. ("Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying his application for disability insurance benefits. For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

    A. **Procedural History**

    Plaintiff protectively filed for disability insurance benefits on August 29, 2019. R. 64. This application alleged a disability beginning on April 3, 2016, which was amended to April 4, 2017, during the administrative hearing. R. 65, 36. Plaintiff's application was denied initially on March 5, 2020, and upon reconsideration on June 30, 2020. R. 69, 93. Plaintiff filed a written request for a hearing on July 8, 2020. R. 98. On February 1, 2021, a hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Plaintiff appeared and testified as well as Sherry Ronning, an impartial vocational expert ("VE"). R. 31. Plaintiff was represented by counsel at this hearing. *Id.*

    On March 12, 2021, the ALJ issued his written opinion denying Plaintiff's claim for disability insurance benefits. R. 13-26. Plaintiff appealed the decision to the Appeals Council, but Plaintiff's request for review was denied on October 5, 2021. R. 1. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); Dkt. 8. Now before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision [15], the Commissioner's motion for summary judgment and response to Plaintiff's motion [19], and Plaintiff's reply [20].

    B. **The ALJ's Decision**

    In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At

---

[1] Michelle King is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment from his amended alleged onset date of April 4, 2017, through his date last insured of December 31, 2019. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the lumbar spine; degenerative joint disease in the bilateral shoulders; renovascular hypertension; diabetes mellitus with polyneuropathy; and obesity. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 16.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations: only occasional reaching overhead with the right upper extremity; frequent performance of bilateral foot controls; occasional climbing of ramps/stairs and no climbing of ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching, crawling; no work at unprotected heights or around moving mechanical parts; and no more than occasional exposure to humidity, extreme cold, and extreme heat. R. 17. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 24. At step five, the ALJ found, in reliance on the VE's testimony, that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the amended alleged onset date of April 4, 2017, through the date last insured, December 31, 2019. R. 26.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); *see also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . .. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

# DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) an improper analysis of Plaintiff's subjective symptoms; (2) error in evaluating the medical opinion evidence; and (3) lack of support for the VE's testimony at step five. As explained below, the Court does not find that any of these arguments warrant a remand.

### A. Subjective symptom analysis

Plaintiff first argues that the ALJ did not properly analyze his subjective symptoms that were reported by him and his wife. Pl.'s Br. at 5, Dkt. 15. Specifically, Plaintiff argues that the ALJ did not explain how his construction work and ATV accident were inconsistent with his reported daily activities. *Id.* Plaintiff further argues that the ALJ impermissibly equated these isolated activities of construction work and ATV riding with an ability to work full-time. Pl.'s Br. at 8, Dkt. 15. Plaintiff also takes issue with the ALJ's description of his treatment as "minimal," and the ALJ's failure to properly address the short-term benefits of his treatment and his problems with insurance accessibility. *Id.* at 6-8.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. Because of the unique position the ALJ has to observe the claimant, this Court will normally not disturb such a credibility determination. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "As long as an ALJ gives specific reasons supported by the record, [this Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Here, the ALJ's evaluation of Plaintiff's subjective symptoms was adequately supported by evidence and explanation.

During the hearing before the ALJ, Plaintiff testified that his daily activities included "managing [his] pain symptoms and trying to [] rest" with only light chores. R. 48. He further testified that he was able to stand 20-30 minutes and sit for 15-20 minutes before pain required him to reposition himself. R. 46. Similarly, Plaintiff's wife described his ability to sit for 10-15 minutes or walk for 20-30 minutes before experiencing severe pain. R. 245. She described his daily activities in much the same way as Plaintiff: days spent switching between sitting and standing, occasional light household chores, and preparation of small meals. R. 246-47. The ALJ found Plaintiff's and his wife's statements about his symptoms not entirely consistent with the evidence in the record, noting a lack of corroboration from the medical evidence. R. 21-22. The ALJ also found that:

> both the claimant's testimony and the wife's report seem somewhat inconsistent with the report of continued construction work/drywalling where he was climbing on scaffolding (as of February 2018, in contrast to his testimony of only repairing drywall where a doorknob makes an indentation) and other activities prior to the date last insured. The records show that the claimant admitted to Dr. Petersen that he was largely compliant with exercise and if not, was still active. He also reported,

> as noted above, that he was stressed with three different jobs and trying to start an ambulance company. The subjective reports documented in the treatment notes fail to support the claimant's testimony that his daily activities during the period at issue was trying to manage his pain symptoms and resting when he could.

R. 22.

Plaintiff finds fault with the ALJ's analysis. First, Plaintiff argues that the evidence relating to his limited construction work and ATV accident were "not developed to support any inconsistency" with his subjective symptoms. Pl.'s Br. at 5, Dkt. 15. Although the ALJ has a duty to fully and fairly develop the record, Plaintiff cites no regulation or case law requiring the ALJ do more than was done here. Although the ALJ did not specifically explain the inconsistencies, this Court and the ALJ are certainly permitted to use their common sense to understand how doing construction work and riding in an ATV is inconsistent with Plaintiff's reports of spending his days managing his pain, resting, and performing only light chores. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (stating that when reviewing an ALJ's credibility determination, the Court will "give the opinion a commonsensical reading rather than nitpicking at it.") (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).

Plaintiff also argues that the ALJ did not properly consider his daily activities and instead focused on these "two isolated activities" to show an ability to work full-time. Pl.'s Br. at 8, Dkt. 15. An ALJ may not equate a claimant's ability to perform daily activities with the ability to perform substantial gainful activity. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."). However, this argument is unconvincing as the ALJ never equated Plaintiff's ability to perform construction work or ride in an ATV with an ability to work full-time. Rather, the ALJ simply explained that these instances of activity are not entirely consistent with Plaintiff's reported daily activities of managing pain and resting. R. 22. These activities are certainly permissible for the ALJ to consider when evaluating Plaintiff's statements about the limiting effects of his symptoms. 20 C.F.R. § 404.1529(c)(3).

Plaintiff also finds fault with the ALJ's characterization of his treatment as being minimal. Pl.'s Br. at 7-8, Dkt. 15. Plaintiff points to his diabetic shots, shaving down on his toes, and Toradol injections as more than minimal treatment. *Id.* However, this argument mischaracterizes the ALJ's opinion. The ALJ stated that "the evidence prior to the date last insured is mostly related to managing his hypertension and diabetes with minimal treatment prior to the date last insured regarding his lumbar spine impairment and alleged neuropathy." R. 22. The ALJ did not say that all Plaintiff's treatment was minimal, just that the treatment relating to his spine and neuropathy was minimal. Yet, the treatments cited by Plaintiff are directly related to his hypertension and diabetes as admitted by Plaintiff himself in his brief. As these treatments do not contradict the ALJ's statement that Plaintiff's lumbar spine impairment and neuropathy were being minimally treated, this argument falls flat.

Lastly, Plaintiff argues that the ALJ ignored entire lines of evidence that contradicted his conclusion. Pl.'s Br. at 6, Dkt. 15. Specifically, Plaintiff points to the ALJ's failure to include the brevity of the pain relief he received from physical therapy as well as his issues with insurance. *Id.*

4

at 6, 7. It is true that an ALJ cannot ignore entire lines of evidence, but that is simply not what the ALJ did here. Rather, the ALJ specifically recognized that Plaintiff "reported feeling better after a therapy visit but it did not last very long" and "feeling some soreness the day of his therapy appointment but feeling better the following day lasting for a couple of days." R. 18, 21. Plaintiff fails to point to any omissions made by the ALJ regarding his short pain relief.

The ALJ also recognized that Plaintiff was unable to get Methadone "refills until his insurance had transitioned, which was not going to be done until November." R. 20-21. However, the ALJ also noted that this lack of insurance had no real effect on Plaintiff's treatment as he was able to get the Methadone refill from Dr. Petersen and did not request a refill of Norco. *Id.* (citing R. 413). In his reply, Plaintiff also points to his inability to get an MRI as justification for his minimal treatment. Pl.'s Reply at 5, Dkt. 20. But Plaintiff does not cite any evidence in the record to indicate that his course of treatment was affected by not getting an MRI. Rather, the only reference to the MRI was from his treating physician, who simply stated that he ordered an MRI to confirm Plaintiff's "significant lumbar disc degeneration/herniation." R. 638. Even without the MRI though, the ALJ still found Plaintiff's degenerative disc disease to be a severe impairment. Plaintiff's belief that the ALJ should have weighed his inability to get an MRI in his favor when evaluating his subjective symptoms, without support from the record, is not grounds for reversal. *See, e.g., Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("Jones must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong."). For all these reasons, Plaintiff has not shown that the ALJ's subjective symptoms analysis is patently wrong, and therefore, a remand is not warranted on this basis.

### B. Medical opinion evidence evaluation

In his opinion, the ALJ found the opinion of Dr. Kenneth Petersen, Plaintiff's treating physician, to be unpersuasive as it was "not consistent with or supported by the evidence of record prior to the claimant's date last insured." R. 23. Instead, he primarily relied on the state agency reviewing physician's opinion at the reconsideration level. *Id.* Plaintiff, however, disagrees with this analysis and believes that more weight should have been given to Dr. Petersen's opinion. Pl.'s Br. at 10, Dkt. 15.

Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to evaluate the medical opinions under the regulation set forth in 20 C.F.R. § 404.1520c. Under these regulations, an ALJ evaluates the persuasiveness of all medical source opinions using the following factors: supportability, consistency, relationship with claimant, specialization, and any other factors which tend to support or contradict the medical opinion. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's opinions, and as a result, an ALJ must discuss how he considered those factors. *Id.* § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* For an opinion to be consistent, it must be consistent with the record. *Id.* § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

Plaintiff primarily argues that the ALJ failed to build a logical bridge from the evidence to his conclusion that Dr. Petersen's opinion was not persuasive. Pl.'s Br. at 10, Dkt. 15. Plaintiff explains that Dr. Petersen's opinion's consistency with the record as well as his treatment relationship with Plaintiff should have led the ALJ to find Dr. Petersen's opinion persuasive. However, the ALJ properly described the required factors in his evaluation as follows:

> I do not find Dr. Petersen's statement or the restrictions in the checkboxes on the questionnaire persuasive because they are not consistent with or supported by the evidence of record prior to the claimant's date last insured, including Dr. Petersen's own treatment notes that fail to document the significant abnormalities and findings consistent with the restrictions indicated by the doctor in his statement and questionnaire. Significantly, as to the signed statement of Dr. Petersen, I note that Dr. Petersen essentially rendered no treatment for the claimant's lumbar impairment during the period at issue outside of providing a prescription for Methadone in September 2019 when the claimant would not be able to get a refill from the pain practitioner until November 2019. Dr. Petersen's physical examinations were largely normal outside of elevated blood pressure readings or did not indicate any musculoskeletal examination at all. Dr. Petersen's assertions and opinion are undermined by the fact that the claimant's own reports directly contradict Dr. Petersen. While also not being documented in the record as using one, needing one, or being prescribed one, the claimant further denied needing a cane in his Function Reports. Also undermining Dr. Petersen's opinion is the fact that the claimant's report to the physical therapist at the beginning of therapy that standing and walking were unrestricted but sitting and reaching were problematic. Additionally, the claimant testified to having no problems with his hands during the period at issue, which raises questions as to why or what the doctor was relying on when asserting the claimant could use his hands and fingers only 50% of the day. I have accommodated problems with sitting and reaching in the above residual functional capacity, which is supported by the evidence of record. Moreover, Dr. Petersen's opinions related to off task time and being incapable of even low stress work lack support with the medical evidence in that they are speculative, as none of Dr. Petersen's examinations indicate that the claimant was distracted from pain, unable to follow directions, exhibited distress or pain behaviors, or that he had mental impairments which would impair his ability to tolerate work stress.

R. 23-24 (citations omitted). The ALJ evaluated the supportability of Dr. Petersen's opinion when he noted that Dr. Petersen only minimally treated Plaintiff's lumbar impairment and the opinion included significant abnormalities that were not found to be documented in Dr. Petersen's treatment notes. He also evaluated the consistency of Dr. Petersen's opinion by pointing to Plaintiff's own statements and reports to the physical therapist contradicting Dr. Petersen. Although the length of the treating relationship between Dr. Petersen and Plaintiff was not

6

expressly considered by the ALJ, the ALJ acknowledged that Dr. Petersen was Plaintiff's treating internist. Regardless, the Court finds no error in the ALJ's evaluation because the ALJ "may, but [is] not required to, explain how [he] considered" this factor. C.F.R. § 404.1520c(b)(2). Accordingly, the ALJ properly considered the supportability and consistency of Dr. Petersen's opinion in finding it unpersuasive and, even if this Court believed differently, it would be improper for this Court to "substitute [its] judgment for the ALJ's determination" as it is supported by substantial evidence. *Gedatus*, 994 F.3d at 900.

Nevertheless, Plaintiff argues that, in evaluating Dr. Petersen's opinion, the ALJ misstated the record and cherry-picked the medical evidence. Pl.'s Reply at 2-3, Dkt. 20; Pl.'s Br. at 10, Dkt. 15.[2] As to the alleged misstatement of the record, it is unclear what exactly the Plaintiff believes was misstated. In making this argument, Plaintiff provides a summary of his physical therapy records but fails to point to any instance of the ALJ making a statement inconsistent with these records. Plaintiff explains the supposedly misstated records as follows: "It is noted under aggravating factors: sitting 30 minutes to an hour, lifting overhead and *standing and walking unrestricted*;" pain established by treatment records with only limited relief offered by physical therapy; and positive straight leg raise, Patrick test, Facet loading test and palpation tenderness. Pl.'s Reply at 3, Dkt. 20 (emphasis in original). The ALJ cited each of these examples in much the same way as Plaintiff. The ALJ noted aggravating factors of "sitting 30-60 minutes and lifting overhead but reported he was unrestricted in standing and walking." R. 21. The ALJ also took Plaintiff's pain levels into consideration and noted the brief relief Plaintiff received from physical therapy. *Id.* Finally, although the ALJ does not explain the specific tests in Plaintiff's medical records, the ALJ did consider them as he cited these medical records in support of Plaintiff's lumbar pain in 2020. R. 22. As Plaintiff discusses the record in much the same way as the ALJ did, it is unclear what Plaintiff believes to have been misstated.

As to the alleged cherry-picking, an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long [as] he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) (citations omitted). Here, Plaintiff points to a report from a pain management specialist that the ALJ allegedly cherry-picked over. Pl.'s Br. at 10, Dkt. 15. However, the ALJ did address this evidence but simply found that it did not provide a basis for "further reduc[ing] the [RFC]." R. 22. Although Plaintiff may not agree with this finding, he "cannot prevail" on a claim of cherry-picking "by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Plaintiff also takes issue with the ALJ's reliance on the state agency physician's opinion because "[n]o rationale is provided for the fact [Plaintiff] can be on his feet six hours per day as required by light work." Pl.'s Br. at 10, Dkt. 15. However, the ALJ found the state agency physician's opinion to be persuasive because it was consistent with the record and supported by the evidence. R. 23. In the single paragraph Plaintiff devotes to this issue in his opening brief, Plaintiff points to no error made by the ALJ in his evaluation of the state agency physician's

---

[2] The argument that the ALJ misstated the record was first raised in the reply and is thus forfeited, but this Court will still address the merits. *See U.S. v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008) ("Arguments may not be raised for the first time in a reply brief…").

opinion and makes no attempt to argue that the evidence cited by the state agency physician failed to support the opinion. Plaintiff also does not point to any medical evidence that should have been but was not considered by the state agency physician other than neuropathy records from after his date last insured. Pl.'s Reply at 2, Dkt. 20 (citing R. 970, 975, 1148-49).

Confusingly, Plaintiff argues that the ALJ played doctor in interpreting "records that post-dated State agency review [that] address [Plaintiff's] neuropathy" to find neuropathy to be a severe impairment. Pl.'s Reply at 2, Dkt. 20. However, two of the records cited by Plaintiff are from visits in February 2020, and the state agency physician completed their review on June 30, 2020. R. 970, 975 85. Thus, the state agency adjudicator *did* have the February 2020 records addressing Plaintiff's neuropathy for their review. Plaintiff does not argue that the January 2021 progress note revealed any new or material information relevant to Plaintiff's neuropathy. Moreover, the records cited by Plaintiff are from after his date last insured on December 31, 2019. While medical records after the date last insured can certainly be considered by an ALJ, they "are relevant only to the degree that they shed light on [Plaintiff's] impairments and disabilities from the relevant insured period." *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008). The ALJ considered the evidence after the date last insured but found that it "provided no basis to further reduce the [RFC]." R. 22. Additionally, the only issue Plaintiff appears to take with the ALJ's consideration of these records is in the ALJ finding Plaintiff's neuropathy to be a severe impairment at step two where the state agency physicians had not. Yet, "[d]eciding whether impairments are severe at [step two] is a threshold issue only" since a finding of even one severe impairment requires an ALJ to continue through the remaining steps of the analysis. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile*, 617 F.3d at 927-28). Therefore, any error at step two is ultimately harmless as long as the ALJ finds even a single severe impairment and considers all the claimant's impairments, severe or not, through the rest of their analysis. *Id.* Thus, even if the ALJ erred in finding Plaintiff's neuropathy to be severe, the error was harmless as he did continue through the five-step analysis and "considered all of [Plaintiff's] impairments." R. 16.

For all these reasons, Plaintiff has not shown that the ALJ erred in evaluating the medical opinions in the record. Therefore, a remand is not warranted on this basis.

### C. VE testimony support

Finally, Plaintiff challenges the ALJ's reliance on the VE's testimony at step 5. Pl.'s Br. at 10, Dkt. 15. Plaintiff argues that the VE provided job numbers without providing substantial support for where these numbers came from, which falls below the baseline of reliability needed for an ALJ to rely on a VE's testimony. *Id.* at 12.

In accordance with the guidelines, the ALJ considered whether Plaintiff could perform jobs available in significant numbers in the national economy with the RFC found before step 4. The Commissioner has the burden at step five of showing that such jobs exist. 20 C.F.R. § 404.1560(c)(2); *see Overmand v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). Plaintiff argues that the Commissioner did not meet this burden. The Social Security Administration "does not tally the number of job openings at a given time, but rather approximates the number of positions that exist, whether vacant or filled, and without regard to… a claimant's likelihood of being hired." *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). Therefore, ALJs can, and typically do, solicit the testimony of a VE to provide guidance at step five. *See* 20 C.F.R. § 404.1566(e). To

8

help with this process, a VE usually consults a publication like the Dictionary of Occupational Titles ("DOT"). *Id.* § 404.1566(d)(1). However, the DOT only describes jobs in the national economy "without also reporting an estimate of how many of those positions exist." *Chavez*, 895 F.3d at 966. This, of course, creates a situation in which the VE must rely on data outside the DOT to estimate job numbers. Typically, VEs will rely on "publicly available sources but also information obtained directly from employers and data otherwise developed from their own 'experience in job placement or career counseling.'" *Biestek*, 587 U.S. at 100 (quoting SSR 00-4p, 2000 WL 1898704, at *2).

The ALJ heard testimony from a VE who testified that someone with Plaintiff's limitations could perform three jobs at the light exertional level: an inspector with 80,000 jobs nationally, an office helper with 80,000 jobs nationally, and a small products assembler with 320,000 jobs nationally. R. 61. On cross examination, Plaintiff's attorney asked the VE a singular question relating to a restriction of occasionally lifting no greater than ten pounds. R. 62. Plaintiff's attorney never objected to the VE's methodology, nor did he offer any evidence to suggest that the VE's methodology was unreliable. The ALJ thus relied on the VE's testimony to conclude that there were jobs that existed in significant numbers in the national economy that someone with Plaintiff's RFC could perform. R. 25. In a post-hearing brief to the Appeals Council, Plaintiff again failed to object to the VE's methodology. R. 305-315.

The Seventh Circuit has held that a claimant who fails to question or raise an objection to the VE's testimony during the hearing forfeits that objection on appeal. *See Leisgang v. Kijakazi*, 72 F.4th 216, 219-20 (7th Cir. 2023) ("[A] claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection.") (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337-338 (7th Cir. 2023)). At the time of the ALJ's decision, ALJs had an "affirmative responsibility" to ask whether a VE's evidence "conflicts with information provided in the DOT" before relying on that evidence. SSR 00-4p, at *4.[3] If there was an "apparent unresolved conflict," ALJ's needed to "elicit a reasonable explanation for the conflict." *Id.* However, a claimant must still timely object if they believe there to be an issue with the VE's testimony. *See Schmitz v. Colvin*, No. 23-3114, 2024 WL 5131605, at *2 (7th Cir. 2024) ("[R]equiring a claimant to raise a timely objection to the sufficiency of a vocational expert's testimony does not improperly shift [the step five] burden to the claimant."). Plaintiff was represented by counsel and had opportunity to object to the VE's methodology at the hearing and in a post-hearing brief but failed to do so. This argument is thus forfeited.

Plaintiff goes on to explain that, although a VE's testimony can constitute substantial evidence at step five, the ALJ still has a responsibility to ensure the "testimony has sufficient indicia of reliability." Pl.'s Br. at 12, Dkt. 15 (citing *Biestek*, 587 U.S. at 107). Understanding his forfeiture, Plaintiff argues that the VE's testimony does not have this minimum baseline of reliability. *Id.* (citing *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285 (11th Cir. 2020)). However, a large majority of the cases relied on by Plaintiff involve a claimant who, unlike Plaintiff, did object to the VE's testimony at the administrative hearing. *See Goode*, 966 F.3d at 1279 ("Ms. Goode's attorney questioned the vocational expert's methodology in reaching those

---

[3] The Court notes that the Social Security Administration rescinded SSR 00-4p on January 6, 2025, replacing it with SSR 24-3p.

9

numbers" and, after an explanation the attorney found to be unsatisfactory, "Ms. Goode's attorney pressed the vocational expert."); *Biestek*, 587 U.S. at 101 ("On cross-examination, Biestek's attorney asked [the VE] where she was getting those numbers from.") (internal quotations omitted); *Bryan S. B. v. Comm'r of Soc. Sec.*, No. 1:19-cv-392-JD-MCG, 2020 WL 7364728, at *10 (N.D. Ind. Sept. 25, 2020) ("Mr. B's attorney probed the basis of the VE's testimony at the hearing…"); *Lisa Ann B. v. Berryhill*, No. 17 CV 9089, 2019 WL 1505914 (N.D. Ill. Apr. 5, 2019) ("At the hearing, Plaintiff contested the reliability of the VE's conclusion that significant jobs [] existed in the national economy."). The only case cited by Plaintiff that did not explicitly state that the claimant objected to the VE's testimony was a case in which the Seventh Circuit addressed the issue of job numbers in dicta. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112-14 (7th Cir. 2014) (reversing based on the ALJ's evaluation of medical opinion evidence).

Plaintiff argues that the VE's testimony about the number of jobs does not meet this "indicia of reliability" standard as the DOT does not provide these job numbers and the VE does not explain where these numbers come from if not from the DOT. The VE's testimony must still have a baseline of reliability even when not objected to at the hearing. *Leisgang*, 72 F.4th at 220 ("[T]he ALJ's duty at step five to 'hold the VE to account for the reliability of his job-number estimates'" has not been displaced nor has "the general rule that a claimant cannot waive the substantial evidence standard."). However, an ALJ can certainly rely on the uncontradicted testimony of a professional who has relevant education and over thirty years of experience in the field. *See* R. 303; *Biestek*, 587 U.S. at 105 ("[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data."). As is typical in these proceedings, the VE submitted her resume for the ALJ and Plaintiff to review. Plaintiff, when directly asked by the ALJ, made no objection to her qualifications. R. 59. Despite the limitations of the DOT discussed above, the VE confirmed that her testimony was consistent with it. R. 59, 61. This further speaks to the reliability of the VE's testimony as it "suggests [she] was grounding her conclusions in reference to materials approved by the Social Security Administration." *Thorpe v. Comm'r of Soc. Sec.*, No. 2:22-CV-13 JD, 2024 WL 3450891, at *3 (N.D. Ind. May 14, 2024) (citing *Chavez*, 895 F.3d at 965). Finally, when the DOT's information was insufficient, the VE relied on her own experience and training to formulate her testimony as permitted by the regulation. R. 62; *see also Biestek*, 587 U.S. at 100 (explaining that a VE may rely on "their own 'experience in job placement or career counseling'" (quoting SSR 00-4p, at *2)). While the VE's testimony would certainly be more reliable if she had produced the data on which she relied, no part of her testimony was incoherent, conflicted with the DOT, or was otherwise improper. Thus, the ALJ had a reasonable basis to rely on the VE's testimony. Accordingly, a remand is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand the Commissioner's decision [15] is denied, and the Commissioner's motion for summary judgment [19] is granted. The Commissioner's decision is affirmed. Final judgment will be entered accordingly.

Date: January 31, 2025              Enter: *Margaret J. Schneider*
                                    Margaret J. Schneider
                                    United States Magistrate Judge